Mr. Jasper, would you like to save any of your 20 minutes for rebuttal? Yes. How much would you like to save? I mean, as much as possible. I'd really save anything in my 20 minutes. Okay. Well, good. How about, say, 8 minutes for rebuttal? Okay. Okay. And then I just want to let you all know that we are three cases today. We're probably going to hold you pretty tightly to 20 minutes aside and then ask you both to keep your voices up because this microphone does not amplify, it only records. All right? Whenever you're ready, Mr. Jasper. Thank you, Your Honor. Good afternoon to all of you, Your Honor.       Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you. Thank you. Thank you. Oh, thank you.      Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Have a good day. The defense and the defense medical expert base his opinion on a surveillance video of a person who walked fine and was not injured. Unfortunately, the person in the video, as the defense admit now, was not the plaintiff. But we were never allowed to bring out that fact before the jury. What about Dr. Stern? You brought it out through Dr. Stern. Well, we did not bring out the fact from Dr. Stern or bring it out effectively that the defense medical expert was saying that he was assuming that the person in the video was the plaintiff. But in any case, that hardly remedies the problem because, first of all, it was buried in the testimony of Dr. Stern. But more importantly, far more importantly, that goes to the fundamental right to be able to confront your accuser. In fact, I understand this is a civil case, but the proponent of that opinion had no ability to confront that expert with the fact that it was his opinion to stress that to the jury, was lost on the jury, and further were prohibited by the trial court from mentioning any further, had no ability to argue the fact or explain to the jury the closing argument. So it totally set it down. I mean, I think part of what's missing for us may be the author of proof where you would have demonstrated how that would have made a difference. How that would have made a difference? I think that the author of proof was sufficient in that we brought up the fact that the defense medical expert based his opinion on the video. That's all that we need to show. It's conceivable in the defense that the video is not the plaintiff. In terms of, you know, developing that further in closing argument, I think that you're talking about the key issue in the case on the key opinion of this witness, that this witness is coming here before the court basically accusing the plaintiff of being a fraud, but it turns out his opinion is fraudulent because it's based on someone that's not the plaintiff. He's given a video of a person and said, here, take a look at this video. He doesn't know who it is. He's entirely dependent upon a private investigator who identifies him unequivocally as the plaintiff. This person in the video walks by and is not injured. What's your conclusion? What's your opinion? Of course, the person is fine and not injured. He is not seriously injured. So it's devastating. I would totally change the outcome of the trial and ask the jury to find out. Wait a second. This guy's opinions? Yes, sir. Well, the offer of proof basically just says that it was one of the basis for his opinion. And, you know, it didn't go into the importance of it, how it related to the other basis, whether it was essential to his opinion, the substantial, whether they were dependent on the video. I mean, it's just that it was one of the basis, and that's. . . I agree, and I don't think it was necessary to do that. You can't unsee the video. You can't unmove the bed. Of course, he was prepped to say, oh, yes, it was not instrumental. It was a small part of it. Of course, he's going to say that. That's for the jury to weigh the credibility of that testimony. But you weren't even allowed to bring it before the jury. That's correct. You were not allowed by the trial court. Well, first of all, the trial court knew that the video was seen by the defense expert, right? Correct. The trial court knew or had strong reason to believe that the video did not depict your client. Correct. The trial court knew that the expert, in part, based his decision, his opinions on the video. Correct. But he precluded you or the defense from bringing out anything about the video or about the opinion being based, in part, on the video. Absolutely. So the judge knew all of it. He knew all of it. He prohibited you from doing it. That's right. I totally agree. And so that's why I don't think it was necessary. I don't think that, you know, make the witness crumble. Nor do I think that's possible in any case. An expert, especially a paid expert, is not going to crumble. I simply needed to bring out the fact that he based his opinion on the video, that it was a mistaken video. Did you understand the court's ruling to preclude you from arguing that in closing argument? No doubt about it. Absolutely. He was unequivocal and clear and quite stirred about it. He had made it clear that he's a good judge and says, this is my ruling and I'm going to revisit my rulings. But in this case, he did allow me the next ruling to address it. But once you rule, that's it. That you couldn't say, that you couldn't argue to the jury that this doctor had based his opinion in some part on the video, that you were not supposed to mention the video again. Was that your understanding of his ruling? Yes. I think that was his ruling in fairness when you look at it. He said absolutely no mention of it. Getting back to the offer of proof. In his report, he kind of waffles a little bit, right? When he says an individual purported to be, appears to be. And then he uses the word purported. Just for the heck of it, I looked up purported in the Black's Law Dictionary. And it's to profess or claim especially falsely. I don't think it matters what the doctor says. Because his opinion is entirely dependent upon the private investigator. The doctor has no ability to say one way or the other who's in the video. But why would the defense attorney give him the video unless it's the plaintiff? But the evidence in the case was that the private investigator had identified the subject of the video unequivocally. But this is just examining him as to the basis of his opinion. So it's really important the weight he gives this. And if he's saying he's not sure of a tariff, it's purportedly, maybe falsely saying a tariff. He may not give it any weight. And if he doesn't give it any weight, but this didn't come out in an offer of proof. If he doesn't give it any weight, how does it hurt his opinion? Well, it did come out because he did claim an offer of proof that, I think, I have to re-read it, but that it was not. Let's give him that. He says it's not instrumental. But that's exactly what the jury gets to decide. He can claim whatever he wants, but is that credible? I don't think a jury would find that very credible. What is that in his disclosure? Didn't say in his disclosure that this was simply an inconsequential error of his opinion. Look at his disclosure. The video is laid out alongside all the other materials on which he bases his opinion. It's not just the video that we're talking about. It's a private investigator's report, photographs, all of which they point to that the defense medical expert bases his opinion on. You can't separate the one from the other. You can't unsee the video. You're showing a video. My goodness, if there's any evidence or material you're going to base your opinion on, here's the person. What do you think, Doc? I think this person walks great. And then you claim that the person is a fraud, but we don't get to bring that out in front of the jury. Talk about a gross miscarriage of justice. This was an unpaid trial. It was a one-sided trial. And in my case, it was a retrial. I asked the court to serve five, I don't know, five, eight months after. You have a restatement in front. Before you leave, I just want to make sure. Mr. Pierce, Judge Pierce has a question. Justice Pierce has a question. Justice Pierce. First thing is it's quiet. Just so that the oral argument record is complete, at page, record page 899, 898 and 99, the question asked of the defense expert was, you relied on all those materials and the surveillance video in rendering your opinions in this case, correct? The witness, the expert witness. Correct. I relied upon all the materials. And you were precluded from even mentioning that in front of the jury, after you had asked your expert earlier in the trial to establish that in her opinion, it was not your client who pointed to the video. Exactly. Because that was the purpose of it. And that was my key default question. One more thing. Thank you so much for pointing that out, Justice. I see. I retain the rest of my time, please, for the debate. Thank you. Good afternoon again, Your Honors. Counsel, and may it please the Court, again, my name is James Marsh. On behalf of the defendants, police in this case, Aspen Commercial Roofing and its employees, Scott Gilman. Your Honors, in some, it's our position that Judge Lipscomb did a very nice job with some difficult evidence. The plaintiff, as you know, had a number of evidentiary issues at trial that arose during the trial, and after lengthy consideration and discussion with counsel, clearly did not abuse his discretion in this case in making the ruling that he did. We also feel that the amount of the verdict was fully supportable and not against the manifest weight of the evidence. If I may discuss Judge Lipscomb's rulings on the surveillance video, the plaintiff here had her trial, and she won. Given the standard of review, the plaintiff, to get a do-over, has the burden, as you know, of establishing not only that Judge Lipscomb abused his discretion in making this ruling on the surveillance video, but also that such abuse was substantially prejudicial and changed the outcome of the trial. We don't believe they can meet that burden. The record shows that Judge Lipscomb conducted a very thorough, thoughtful, and well-researched, he did his own research, analysis of the evidentiary issue before ruling. But isn't it important to give the opportunity to cross-examine an expert as to the basis of their opinion? Isn't that kind of fundamental? It's a fundamental right, Your Honor, and Judge Lipscomb recognized that and acknowledged that. But he conducted his Rule 403 analysis and said, while it might be relevant evidence to cross-examine the expert regarding that, if that's outweighed by the prejudicial value of it, and it's outweighed by the danger of unfair prejudice, and most significantly, if it doesn't serve as a valid basis for an expert's opinion, then it should not be used. And that's really what he decided. He said this is not a valid basis for an expert's opinion because, first of all, a plaintiff, after Dr. Petroff issued his report, denied in discovery it was her. And in his report, he took great pains to say this video purports to depict Swetha Karn. He never said it's her. I'm sorry? But isn't it important to get this to the jury? How would the jury know about this? And relevance is, I mean, I'm very familiar with 403, but relevance, when you're talking about cross-examination of the basis, it's relevant as to the basis of the opinion. The basis of the opinion is fundamentally flawed. It's relevant. Where's the unfair prejudice? I think we're a little confused to where the unfair prejudice to your client would have been in allowing the plaintiff to fully cross-examine your expert. Well, I think the prejudice is to confuse the jury. But I think what's confusing about allowing the plaintiff to cross-examine your expert about him viewing a video that was given to him purporting to be the plaintiff, I think that's confusing. Well, I think that's just it. But the fact that Dr. Kutroff said, this is a video that was given to me, and it purports to depict somebody. And I assume that this person is purported to be this person. But basically, I can't be sure. And that's what Judge Lipscomb was very concerned about. But the witness also said that my opinion is based in part on the video. Right? He said he relied on all of the things that he was given. Including the video. The video was given to him. So you're not contending that the video had no import in his opinion? I believe it had no import in his opinion. And we don't know otherwise. Basically, here's the problem, Judge. We don't know otherwise. And we believe that the plaintiff's counsel weighed this in his offer of proof. And Justice Griffin made very good points for me. Thank you. But the offer of proof requirement is a very stringent one. The record has to be clear regarding what the affluent testimony would have been and what it would establish. This is a very perfunctory offer of proof. It established that Dr. Kutroff was given the surveillance video as part of the great wealth of information that he was given. He made the assumption that the person in the video purported to be Ms. Kahn. And he said it throughout his report, purported to be. And he relied on all of the materials given to him in rendering his opinions in the case. Did the jury hear any of that? Did not, Your Honor. That's the gatekeeper function that Judge Kutroff or Judge Schoen said. How can all those points be relevant and important on the one hand, which you claim great credit to Judge Lipscomb for understanding, but not be important enough for the jury to consider in deciding whether and how to evaluate the defense expert? Judge Lipscomb was charged with the responsibility of making sure that an expert cannot testify in front of a jury based on speculation or conjecture about what something, what may have occurred, what might have occurred, what he believes may have happened. So maybe he should have struck, maybe he should not have allowed them to testify in any of it. I mean. Such a motion was never granted, but never brought to the court. But the court determined that because there was insufficient factual support for this expert's opinion, because basically he's surmising that this person purports to be someone, that cannot be the basis of an expert's opinion. But it was, right? I don't think it was, just because we don't know that it was. I read in the transcript, I just read it five minutes ago, where the expert said, yes, I considered the video in formulating my opinion. You see, 98 and 899 of the record. Okay. He made the assumption that it purported to be the plaintiff. I received the video at the time you received the other materials. You relied on all of those materials and a surveillance video in rendering your opinions in the case correct. Correct. I relied upon all the materials. However, Judge, what's missing, as Judge Griffin pointed out, is the preservation of evidence for appeal. In no way was Dr. Petroff asked if his opinions in the case were reliant on that video. And in other words, he did not say, he wasn't asked the question, can you render your opinions without the video? Is it dependent, is your opinion dependent on that video? He wasn't asked that question. Why would he have to be asked that question if he just said, my opinion is based on all those factors, including the video? I think, Judge. I mean, he can beat a dead horse in an offer of proof also. The issue was before Judge Lipscomb that here's a witness who's basing his opinion in part on a video of some person that is not the plaintiff. Okay. And therefore, he precluded anybody from mentioning the video or cross-examining your expert as to the basis of his opinion. What more do we all need to know to decide whether that was right, wrong, or indifferent? I think we need that last step, Your Honor. Couldn't he have rendered his opinions without the use of the video? Well, of course he'll say yes to that. Of course he will. The point is that possibly his opinion, and this would be the argument that Plaintiff's Counsel would have made, is his opinion was tainted by believing that the person on the video was the plaintiff. That's the point. And I guess my question for you is do you agree that there was room, given Judge Lipscomb's ruling, for the plaintiff to have argued to the jury that his opinion was tainted by the video? I would say that this is a piece of Dr. Petrow's opinion that could not go to the jury because it's inherently unreliable, as Judge Lipscomb ruled. I understand what you're saying. We have the fundamental right to cross-examine that Counsel has trumpeted in his brief, which he should. But Judge Lipscomb was faced with a very difficult proposition here. He has an expert who – he has a plaintiff who said it's not her. He's got an expert who in his report said this is somebody who purports to be somebody. He never concluded, Dr. Petrow, that this person in the video was her. I'm sorry. From his report. The individual in the evidence – I think the word video is missing – appears to be Ms. Lita Kern. That's on page 4. He uses the word purport, but he also uses the word appears. I mean, he – it seems to me, arguably, and again, this could have come out across, assumed, was under the assumption that it was the plaintiff. And that arguably – I mean – I understand. And I think it's arguable, and that's what Judge Lipscomb was troubled with. Arguably, because he said, Dr. Petrow, that this is a person who purports to be. And, yes, he said that it appears to be. But he was very, very troubled with the fact that no one really could conclusively say it was her. And so how can that serve as – Is that in the record somewhere, that he was troubled by that? Where is that? The fact – I'm sorry, that the judge was troubled. Oh, the judge was troubled. But the doctor never said he was troubled. The doctor has done evidence saying that this is a person who purports to be. He, Dr. Petrow, never conclusively said it was Sveta Kern, and the plaintiff denied it was her. So based on those two facts, Judge Lipscomb, as is his obligation as the gatekeeper, determined that this could not serve as a basis for an expert opinion. Citing these cases that talk about how you can't, you know, gasp or base an opinion on unsubstantiated evidence. But it was a basis.  And shouldn't it be up to the jury to decide the impact of having one of the basis of the expert's opinion be an incorrect foundation to it? Shouldn't that be up to the jury to then decide? Well, Judge, I think then what's the purpose of the gatekeeper function and not allowing an expert to rely on inherently unreliable evidence and giving opinions? But you keep saying that, and maybe we're not following you. The expert did rely on it. That had already happened long before it came to light that this was not the plaintiff or that the plaintiff denied it was her. The expert had already reached his conclusion, right? Right. He didn't know that she was going to deny it when he issued his report. So what we have is Dr. Petroff saying that this is a person who purported to be and then coming to conclusions. And the court went through the analysis and determined, could Dr. Petroff independently support these opinions that he gave without the video and determined that his opinions that he gave based on the medical record were fully supported and supportable and without objection from plaintiff, he was allowed to give all of his opinions. So I think I don't know if I mentioned your questions or not. Yes, this is one of the things he looked at, but I don't think it was conclusive that it had anything to do with his opinion. And again, as Judge Griffin said, I don't think that that was adequately preserved for appeal because the question was not asked during the offer of proof whether the video had anything to do with the opinions regarding disability or whether he could offer his opinions independent of this video, which merely purported to be Ms. Karn. And that's the problem that Judge Lipscomb faced, and I think that's the problem with this video in the first instance is that it wasn't credible evidence on which an expert could rely due to the lack of ability to conclusively identify Ms. Karn in the video. So in any event, we believe that particular issue has been weighed due to the lacking order of proof. Just very briefly on harmless error, I'm not positive how I'm doing on time. You're fine. Okay. Very good. The very evidence, as Your Honor pointed out, that Plaintiff claims was improperly excluded was in fact introduced through the plaintiff's own expert, Dr. Stern. Dr. Stern testified that Dr. Petroff looked at the video as one of the bases for his opinion, and Dr. Stern testified that the person in the video was not Ms. Karn. That's where the plaintiff's attorney stopped. He didn't ask Dr. Stern to elaborate. He didn't question Dr. Stern about the basis of an expert's opinion or seek criticisms from Dr. Stern regarding Dr. Petroff's opinions or the bases for them. Just so that all that occurred before the judge made his ruling. That's correct. That is correct, Your Honor. Yes. So... Okay. Okay. All right. And so, again, the court ruled that the video was merely one of many things that was looked at by Dr. Petroff, and he could say only that it purported to be Ms. Karn. Also, again, Dr. Petroff did not say the video played any role in his opinions, and we believe that based on that, not only was it rigged, but it was harmless error if the court finds that the trial court arguably committed error. As I mentioned, the court ruled that Dr. Petroff's opinions were overwhelmingly supported by the materials he reviewed before offering his opinions. Indirect defense counsel laid a very thorough foundation for everything that was looked at by Dr. Petroff regarding medical records, plaintiff's expert disclosures, investigative reports, photographs, all of the treating doctor records, plaintiff's hospital records, various chiropractic records, et cetera. After laying this foundation, defense counsel introduced, again, without objection from plaintiff's counsel, Dr. Petroff's opinions regarding the plaintiff's medical condition, treatment, injuries, and disabilities. Among the conclusions offered by Dr. Petroff in support of his opinions that Ms. Karn was not disabled to the extent claimed, the only objective injury was an abrasion and contusion of her ankle. There was no damage to the muscle, tendon, or nerve. There were many significant long gaps in treatment that was inconsistent with any sort of pain or injury, and the objective testing, including EMG testing, showed no objective basis for any pain. Dr. Petroff's opinions were fully supported, as ruled by the trial court, without objection from the plaintiff's attorney, and the court actually used the term that the opinions were supported mutually exclusively from the video. He made that determination. So, again, I keep going on. How did he make that determination if he never heard the witness say that my opinion is exclusive of the video? Well, he made the determination that the doctor could offer his opinions, which were fully supported by his examination of the medical chart, whether or not he looked at the video at all. That was kind of step two of his analysis. First, I've got to say, is this something that an expert relies on, should be reliable to rely and testify on? And the answer to that, no, because what Judge Lipscomb felt was the inherent unreliability of the video. But we all know that if the plaintiff had been allowed to ask one more question, that being, did you rely on anything else, the expert would have said, consistent with his F3, yes, a video. Right. Well, he would have been asked that question, and that's what I think the court was trying to avoid, because it's inherently unreliable. You keep going back to me, to that I understand. Right. But, again, it's something else. I understand the difficulty that you're in advancing your argument, but it all gets down to he did have an opinion that clearly relied on, in part, a video that the jury never was able to hear about. And the plaintiff was never allowed to cross-examine about the video of someone that was not the plaintiff. Clearly, that had to have had some impact on his opinion. Right. Well, Judge, again, I understand what you're saying, but you don't understand what Judge Lipscomb was going through. He said this isn't something an expert can rely on, because no one really knows if it's her, including this expert. So how can he rely on that? Did this whole issue just suddenly arise in the middle of trial? This was not anything anybody anticipated? Was the expert not deposed? The expert was not deposed, Your Honor. It actually was raised by Judge Lipscomb himself, and it probably about four or five hours of colloquy that resulted ultimately in the judge ruling this way. Counsel argued extensively. He reviewed everything. The judge may have very fully informed at night after trial, went and did his own research, tried to figure out if this is something that an expert should be allowed to testify about. He concluded he shouldn't. Right. But it came up with your last question to the plaintiff about working in the eyebrow threading. And the judge himself said, I'm going to strike that as irrelevant. In any event, Your Honor, given the foundational support for Dr. Petroff's ultimate opinions, we don't believe the plaintiff can establish substantial prejudice required for the court to reverse the trial court's rulings. Any claimed error by the judge we think was harmless, given the wealth of support for the conclusions that were offered by Dr. Petroff. Your Honor, on the manifest weight of the evidence, we don't believe that the plaintiff has met her obligation to show that the verdict was clearly manifestly inadequate and a larger verdict was clearly evident. We've cited those cases in our brief, and so I won't belabor them. But I think given the law that's very well established on that issue, the jury here, every element of damages that the plaintiff asked for, the plaintiff didn't ask for, medical expenses, we believe that the award reflects the jury's fully considering all of the evidence, weighing the credibility of the witnesses, and weighing the evidence. So we ask that the plaintiff's relief sought in their appeal be denied. Thank you. Okay. Real quickly, I think there are a lot of inaccuracies I'd like to point out. There's a question as to whether the defense medical expert's opinions on the video had to do with disability. If you look at the disclosure, it's pointed on page 8 of my brief, open brief. I quote him for this disclosure. The surveillance videos and photographs demonstrate an individual with a normal gait pattern and an ability to ambulate in standard shoes without gait-assisted devices. The claim limitations and the ability to stand and walk are not consistent with the physical activity and capabilities of the individual seen in the videos and photographs. Sick. Also, given the documented improvement of pain ratings, post-operative healing, normal physical examination by the expense of surveillance evidence of the individual, assumed to be Ms. Swara Khan, no future pain, suffering, or disability are expected to continue beyond October of 2016. So his opinions on the video absolutely are part and parcel of his opinions as to the limitations of disability plaintiff. Defense has continually claimed that we did not, or that's without objection to the plaintiff. I've said that multiple times in our briefs, that we objected to being unable to cross-examine the expert. We also asked that the opinion of the expert as to the severity of the injury and the primacy of the injury be barred, or in the alternative that he be barred altogether. That's on page C870 of the record. So I just want to correct that as well. Also, I want to point out that two of the most fundamental arguments in this case, the errors that the trial court made, have not even been addressed by the defense. Number one, the plaintiff had a fundamental right to cross-examine this expert to the bases of his opinions. That was absolutely fundamental. If you look at the Sears case, that was so much more peripheral than this case, which goes to the Hardy issue. In the Sears case, that was simply as to whether the expert had been given referrals by the plaintiff's attorney. Here, this goes to the court, the expert's opinion. They also misunderstand, as I think the trial court did, fundamentally misunderstand the liability 403 test, which the court misapplied. It goes to the proponent of the evidence, not the upholder of the evidence. And furthermore, if the court is going to bar the opinion of the witness, as it should do in this case, you bar the opinion, okay? So, for example, you said the Modelsky case and the- There's no motion to eliminate, though. Well, absolutely. In terms of the opportunity to deal with that, this isn't the end of the day. Well, it is, in effect, a motion to eliminate. It was raised by the defense. It wasn't raised to respond to, at least initially, by the trial court. It was ultimately taken over to respond to, but it was a motion to eliminate at that point. And we did ask that the opinions be barred, or that the expert be barred altogether, or, at the very minimum, we'd be allowed to cross-examination. And was that all before the witness had testified? Yes, it was before the doctor had testified. Also, I'll just point out, and remind the court, if I can find it, that the trial court ruled no mention about video surveillance from anybody, and no questions about it. That absolutely precludes closing the argument about it. That's how it was understood, and that's how it was implemented. So they've conceded, if you look at their brief, they concede that the testimony was unreliable. That's in their headline, in their headline, not just in the body. And there was not a proper basis for expert testimony. What else do you need to bar this expert? This expert should be barred. His opinion should be barred. And they keep making up stuff about that he plays down the line on this video. It doesn't say that anywhere in the disclosures. It's simply listed among the disclosures, and that's for the jury to separate out and sort out. The jury should have, at the very minimum, heard about that. But in my opinion, once they've conceded that the testimony and the basis is unreliable and not a proper basis for his testimony, it should be stricken. The remedy here, this was an error that they made, but it's an error without a remedy. And this court, in my view, needs to apply that remedy. The first remedy is to bar the expert altogether. In other words, to bar the opinion about permanency or, at the very minimum, allow the plaintiff to cross-examine the expert at retrial and ask the court to so find. Anything else? No. Wait. Oh, one other thing I do want to point out. It's important. If you look at their argument on damages received, they concede that this was a hotly contested case on both liability and damages, and that goes to the harmless error argument. It's not harmless error. It's a closely contested case, and it could tip either way from their perspective. In my view, it's overwhelming when in favor of the plaintiff. But from their perspective, vacancy, this is a hotly contested case, and we have our inability to cross-examine the expert and bring out his faulty basis on the most fundamental key opinion. So there's no question that this is reversible error. It was absolutely outcome determinative. Thank you. Thank you, Pat. Thank you both. We will take this matter under advisory.